**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-01547-NYW-MDB

ALEXA MARRA,

 Plaintiff,

v.

OWNERS INSURANCE COMPANY, a/k/a AUTO-OWNERS INSURANCE COMPANY,

 Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant Owners Insurance Company's Opposed Motion to Limit and/or Exclude Expert Testimony Pursuant to Fed. R. Civ. P. 26(a)(2) and F.R.E. 702 (the "Motion to Exclude"), [Doc. 43], and Defendant Owners Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Second and Third Claims for Relief Pursuant to Fed. R. Civ. P. 56(a) (the "Motion for Partial Summary Judgment"), [Doc. 46]. The Court has reviewed the Motions and concludes that oral argument would not materially assist in their resolution. For the reasons set forth below, the Motion to Exclude is **GRANTED in part** and **DENIED in part** and the Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

This case arises out of a motor vehicle collision and subsequent claim for underinsured motorist ("UIM") benefits. [Doc. 3 at ¶¶ 6–8, 15, 24, 39]. At all relevant times, Plaintiff Alexa Marra ("Plaintiff" or "Ms. Marra") was insured through an insurance policy issued by Defendant Owners Insurance Company ("Defendant" or "Owners"). [*Id.*

at ¶ 4].  After Ms. Marra was injured in a traffic collision for which she was not at fault, she submitted a UIM claim to Owners.  [*Id.* at ¶¶ 8, 15].  Owners denied the claim on the basis that UIM benefits were not owed under Ms. Marra's policy.  [*Id.* at ¶¶ 24, 45].

Ms. Marra subsequently sued Owners, asserting one breach of contract claim, one claim of unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory bad faith"), and one claim of common law bad faith.  [*Id.* at 10–11].  Owners now moves for summary judgment in its favor on Ms. Marra's bad faith claims.  *See* [Doc. 46].  Owners also moves to exclude the testimony of several of Plaintiff's expert witnesses.  *See* [Doc. 43].

I.    **Motion for Summary Judgment**

A.    **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element

of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Once this movant has met its initial burden, the burden then shifts to the nonmoving party

to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When considering the evidence in the record, the Court cannot and does not weigh

the evidence or determine the credibility of witnesses.  *See id.* at 249; *Fogarty v. Gallegos*,

523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court views the record in the light

most favorable to the nonmoving party.  *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d

1323, 1326 (10th Cir. 2019).

### B.    Undisputed Material Facts

The following undisputed material facts are drawn from the summary judgment

record.

1.    At all relevant times, Ms. Marra was insured through an automobile

insurance policy issued by Owners, providing up to $250,000 in UIM coverage.  [Doc. 46

at ¶ 1; Doc. 52 at 2 ¶ 1; Doc. 46-2].

2.    Ms. Marra was involved in a motor vehicle collision and recovered $100,000

from the tortfeasor's insurance company, which was equal to the tortfeasor's liability

limits.  [Doc. 46 at ¶¶ 2–3; Doc. 52 at 2 ¶¶ 2–3; Doc. 21 at 10 ¶¶ 1–3].

3.    On November 24, 2021, Ms. Marra submitted a UIM claim to Owners, along

with approximately $53,000 in medical bills.  [Doc. 46 at ¶ 4; Doc. 52 at 2 ¶ 4; Doc. 46-3;

Doc. 46-4 at 1].

4.    On March 9, 2022, Owners sent Ms. Marra a letter advising that it did not

believe UIM benefits were owed.  [Doc. 46 at ¶ 5; Doc. 52 at 2 ¶ 5; Doc. 46-4 at 1].

5.      On October 5, 2023, Plaintiff's counsel sent a demand letter to Owners, demanding benefits in an amount equal to the policy's UIM liability limits.  In that letter, Plaintiff claimed between $67,541.32 to $70,391.32 in economic damages and $915,982.00 in total damages (including non-economic damages).  [Doc. 46 at ¶¶ 6–8; Doc. 52 at 2 ¶¶ 6–8; Doc. 46-5 at 10–11; Doc. 46-6].

6.      After receipt of the demand letter, Owners hired Dr. Marjorie Eskay-Auerbach ("Dr. Eskay-Auerbach") "to undertake a medical records review and address the causal relationship, if any, between Plaintiff's claimed injuries" and the collision.  [Doc. 46 at ¶ 9; Doc. 52 at 2 ¶ 9; Doc. 46-1 at ¶ 9].

7.      After Owners received Dr. Eskay-Auerbach's report and provided a copy to Plaintiff, Owners sent a letter to Plaintiff's counsel on February 9, 2024 reiterating that it did not believe it owed any UIM benefits to Plaintiff.  [Doc. 46 at ¶¶ 16–18; Doc. 52 at 3 ¶¶ 16–18; Doc. 46-14; Doc. 46-15].  Owners sent an additional letter on February 27, 2024 that summarized Dr. Eskay-Auerbach's opinions and repeated its position that Plaintiff's damages attributable to the subject collision did not exceed $100,000.  [Doc. 46 at ¶ 19; Doc. 52 at 3 ¶ 19; Doc. 46-16].

8.      Plaintiff's counsel responded by providing a report from Dr. Stephen Scheper ("Dr. Scheper"), who disagreed with Dr. Eskay-Auerbach's opinions.  [Doc. 46 at ¶ 20; Doc. 52 at 3 ¶ 20; Doc. 46-17; Doc. 46-18].

9.      Owners obtained a supplemental report from Dr. Eskay-Auerbach addressing Dr. Scheper's opinions and provided that supplemental report to Plaintiff's counsel on April 24, 2024, again repeating its position that UIM benefits were not owed. [Doc. 46 at ¶¶ 21–23; Doc. 52 at 3 ¶¶ 21–23; Doc. 46-19; Doc. 46-20; Doc. 46-21].

10.    Plaintiff filed this lawsuit on April 26, 2024.  [Doc. 46 at ¶ 24; Doc. 52 at 3 ¶ 24; Doc. 3 at 1].

**C.    Analysis**

Under Colorado law, there are two types of insurance-based bad faith claims available to an insured party:  (1) common law bad faith and (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory bad faith").  *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021).  Plaintiff asserts both here, *see* [Doc. 3 at 10–11], and Defendant moves for summary judgment in its favor on those claims, *see* [Doc. 46].

To succeed on a statutory claim of unreasonable delay or denial, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis.  *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).  The requirements for success on a common law claim are similar, but "heightened."  *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020).  In addition to demonstrating that the insurer delayed or denied the payment of benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim."  *Id.* (quoting *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018)).

Thus, to succeed on either bad faith claim, Ms. Marra must show that Owners acted unreasonably.   "The reasonableness of the insurer's conduct is determined

objectively and is 'based on proof of industry standards.'"  *Schultz v. GEICO Cas. Co.*,
429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89
P.3d 409, 415 (Colo. 2004)).  So long as the insurer had a reasonable basis for its action,
it did not act unreasonably.  *See Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574,
580 (10th Cir. 2014) ("We find nothing unreasonable about American Family's denial of
her claim because it had a reasonable basis for its action."); *Ayala v. State Farm Mut.
Auto. Ins. Co.*, 628 F. Supp. 3d 1075, 1082 (D. Colo. 2022) ("An insurer's denial of a claim
does not constitute statutory bad faith if the insurer has a reasonable basis for the
denial.").  The insurer's decision to deny benefits is evaluated "based on the information
before the insurer at the time of that decision."  *Schultz*, 429 P.3d at 847.

"What constitutes reasonableness under the circumstances is ordinarily a question
of fact for the jury."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).
But "in appropriate circumstances," such as "when there are no genuine issues of material
fact, reasonableness may be decided as a matter of law."  *Id.*

### 1.    Statutory Bad Faith

Owners argues that it is entitled to summary judgment on Plaintiff's statutory claim
because it had two reasonable bases to deny Plaintiff's claim, so Plaintiff cannot establish
that its decision was made without *any* reasonable basis.  [Doc. 46 at 12–18].  The Court
addresses Defendant's second stated basis first.  Owners contends that its decision to
deny Plaintiff's UIM claim was supported by a reasonable basis because Owners relied
on Dr. Eskay-Auerbach's report in making its decision.  [*Id.* at 15].  It asserts that "[a]n
insurer's reliance on an expert report, prepared by a qualified professional according to
established  and  reliable  methods,  has  been  found  to  serve  as,  at  a  minimum,  a

reasonable basis for its claim determinations."  [*Id.* at 16 (emphasis omitted) (first citing *El Dueno, LLC v. Mid-Century Ins. Co.*, No. 21-cv-01532-DDD-JPO, 2024 WL 1236245, at *2 (D. Colo. Feb. 23, 2024), *aff'd*, No. 24-1110, 2025 WL 1540329 (10th Cir. May 30, 2025), and then citing *Avalon Condo. Ass'n, Inc v. Secura Ins.*, No. 14-cv-00200-CMA-KMT, 2015 WL 5655528, at *5 (D. Colo. Sept. 25, 2015))].

Ms. Marra responds that Defendant's reliance on the expert report was not reasonable because Dr. Eskay-Auerbach's opinions "have been contradicted by both Plaintiff's retained medical experts and treating providers."  [Doc. 52 at 15].  Specifically, she directs the Court to her own expert's report, where Dr. Scheper disagreed with Dr. Eskay-Auerbach's conclusions and criticized Dr. Eskay-Auerbach's approach in forming her opinions.  *See* [*id.* at 17]; *see also* [Doc. 46-18].  And elsewhere, Plaintiff argues that another court in this District "deemed an insurance company's exclusive reliance on one expert's report while ignoring the reports of an insured's experts is itself evidence sufficient to support a verdict against an insurance company for bad faith and unreasonable denial of benefits."  [*Id.* at 15 (citing *Casaretto v. GEICO Gas.* Co., 16-cv-00285-MEH, 2017 WL 7731742, at *4 (D. Colo. Aug. 9, 2017))].

However, the mere fact that there was disagreement between Dr. Eskay-Auerbach's report and Dr. Scheper's report is insufficient to show that Defendant's reliance on Dr. Eskay-Auerbach's report was *unreasonable*.  "[D]isagreements between an insurance company's expert and a plaintiff's expert do not necessarily suggest that the [insurance company's] investigation or claim denial was unreasonable."  *El Dueno, LLC v. Mid-Century Ins. Co.*, 2025 WL 1540329, at *4 (10th Cir. May 30, 2025).  Here, Plaintiff does not articulate any relevant insurance industry standard that Owners violated by

relying on the Eskay-Auerbach report or through the actions it took in response to receiving Dr. Scheper's conflicting opinions. *See* [Doc. 52 at 15–18]. "Industry standards supply the guidepost to assess the reasonableness of the insurer's conduct," *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1239 (10th Cir. 2020) (citing *Goodson*, 89 P.3d at 415), and without some articulation about what industry standard Owners violated, no reasonable jury could find that Owners acted unreasonably, *see El Dueno*, 2025 WL 1540329, at *3 (finding it "glaring" that plaintiff "never articulate[d] any industry standard" in arguing that insurer's reliance on expert report was unreasonable and affirming summary judgment in insurer's favor); *Avalon*, 2015 WL 5655528, at *5 ("Although Plaintiff disagrees with [the expert's] findings, mere disagreement of this sort is insufficient for Plaintiff to sustain its bad faith claim.").[1]

Accordingly, to the extent Owners relied on Dr. Eskay-Auerbach's report in denying Plaintiff's claim in 2024, the Court finds that Ms. Marra has not established a genuine dispute of fact as to Defendant's reasonableness. *El Dueno*, 2025 WL 1540329, at *3. Thus, in this respect, reasonableness may be determined as a matter of law. *Vaccaro*,

---

[1] The Court respectfully concludes that *Casaretto* provides little support for Plaintiff's argument. In *Casaretto*, the court denied an insurance company's post-trial motion for judgment as a matter of law upon concluding that the jury's verdict was supported by sufficient evidence of bad faith. 2017 WL 7731742, at *4. Specifically, there was evidence that the defendant insurance company took no action to resolve a discrepancy in causation opinions between the plaintiff's treating physician and the defendant's independent medical examiner, and the court found that the evidence "demonstrat[ing] that [the insurer] did not investigate conflicting statements in the record" was sufficient to support the jury's finding of unreasonable conduct. *Id.* But here, Plaintiff does not argue or present evidence showing that Owners took no action to resolve the conflicting opinions; rather, the undisputed facts establish that, in response to receiving Dr. Scheper's opinions, Owners sent Dr. Scheper's report to Dr. Eskay-Auerbach, asked her to provide a supplemental report, obtained that supplemental report, and provided that supplemental report to Plaintiff. [Doc. 46 at ¶¶ 20–23; Doc. 52 at 3 ¶¶ 20–23].

275 P.3d at 759. But Defendant cannot rely on Dr. Eskay-Auerbach's report to defeat the *entirety* of Plaintiff's statutory bad faith claim, since "the reasonableness of an insurer's decision to deny or delay benefits to its insured must be evaluated based on the information that was before the insurer at the time it made its coverage decision," *Schultz*, 429 P.3d at 848–49, and it is undisputed that Owners received Dr. Eskay-Auerbach's report on December 9, 2023, *see* [Doc. 46 at ¶ 16; Doc. 52 at 3 ¶ 16]. Thus, Owners could not have relied on the report in its initial denial of Plaintiff's UIM claim on March 9, 2022. *See* [Doc. 52 at 3–5, 14–15 (Plaintiff suggesting that Defendant's actions related to the initial denial in 2022 were unreasonable)]. Accordingly, this argument does not entitle Defendant to summary judgment on the statutory claim, so the Court turns to Defendant's alternative argument.

Defendant's other argument relies on the fact that Plaintiff's claimed economic damages did not exceed the $100,000 she received from the tortfeasor's insurance company. It takes the position that "noneconomic and impairment damages are inherently subjective and unknowable, and an insured is not entitled to a sum certain for such damages." [Doc. 46 at 13]. Defendant then appears to argue that, because non-economic damages are "inherently subjective and unknowable," then non-economic damages can *never* be measured at a sum-certain amount, and for this reason alone Owners necessarily had a reasonable basis to deny Plaintiff's claim: "[a]s [non-economic damages] are inherently unknowable damage categories for which no sum certain is owed to an insured, and which Owners disputed, Plaintiff cannot establish Owners lacked any reasonable basis for its evaluation of the Claim by disagreeing that such damages

totaled more than $29,608.69."[2]  [*Id.* at 10 (emphasis omitted)]; *see also* [Doc. 53 at 6

("[I]f an insured is not entitled to any sum certain for these damage categories, and the

sole way to show entitlement to any UIM benefits is to establish a sum certain for such

categories, it provides credible evidence for an insurer to dispute a claim." (emphasis

omitted))].

The Court respectfully disagrees with this argument.  In 2024, the Colorado

Supreme Court confirmed that, under *State Farm Mutual Automobile Insurance Co. v.

Fisher*, 418 P.3d 501 (Colo. 2018), section 10-3-1115 requires an insurance company to

pay *undisputed* non-economic damages, even if other portions of the claim remain in

dispute.  *See Fear v. GEICO Cas. Co.*, 560 P.3d 974, 981 (Colo. 2024).  And even though

"non-economic damages tend to involve greater subjectivity than other types of damages

like medical expenses and, as a result, it may well be a rare case in which non-economic

damages are not reasonably disputable," the *Fears* court "decline[d] to conclude, as a

matter of law, that such damages (or a portion thereof) can never be undisputed or free

from reasonable dispute such that *Fisher* would require an insurer to pay them."  *Id.* at

981–82.  The Court thus disagrees with Defendant's suggestion that an insurer *always*

has a reasonable basis to deny UIM benefits if the insured relies on non-economic losses

to establish entitlement to those benefits.

Alternatively, Defendant argues that "Plaintiff can only establish that there was a

valuation dispute between the parties as to" her claimed non-economic damages.  [Doc.

---

[2] Defendant appears to reach this number based on Plaintiff's claim of $70,391.32 in
medical expenses on October 5, 2023.  But as mentioned above, in her initial claim in
November 2021, Plaintiff claimed approximately $53,000 in medical expenses.  [Doc. 46-
4 at 1].  The exact amount of claimed medical expenses is not material to this Court's
ruling.

46 at 10]; *see also Fear*, 560 P.3d at 981 ("[A] genuine difference of opinion regarding the value of an insurance claim may weigh against a finding of bad faith.").   Plaintiff responds that Defendant's evaluation of her claim was unreasonable because it "failed to consider all evidence presented by Plaintiff."  [Doc. 52 at 13 (emphasis omitted)].   She references the report of her insurance industry expert, John Kezer ("Mr. Kezer"), and argues that Mr. Kezer's report "detail[s] numerous instances of what constitutes bad faith and unreasonable conduct on the part of Defendant" and is "sufficient in and of itself to defeat Defendant's Summary Judgment Motion as this constitutes evidence that a jury could reasonably find, as Plaintiff contests, that Defendant did not act reasonably and instead acted in bad faith and in violation of the statue in responding to her claim."  [*Id.* at 14–15].

Insofar as Plaintiff cites to the entirety of Mr. Kezer's report and claims that the report is alone sufficient to defeat summary judgment, the Court disagrees.  "[I]t is the responding party's burden to ensure that [a] factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (cleaned up).   This Court has no obligation to search through Mr. Kezer's report to find support for Plaintiff's arguments.  *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

Even so, the Court concludes that Plaintiff has done enough to avoid summary judgment to the extent her claim is based on events prior to Defendant obtaining and relying on Dr. Eskay-Auerbach's report.  Relevant here, Plaintiff's bad faith claims are based at least in part on Defendant's denial of UIM benefits on March 9, 2022.  *See* [Doc. 21 at 2].   And in her Statement of Additional Undisputed Facts, Ms. Marra directs the

Court evidence that Defendant's claim adjuster's notes "do not reflect any evaluation of Plaintiff's [original] demand between December 20, 2021 and March 9, 2022," "do not indicate that [the claim adjuster] reviewed any of Plaintiff's medical records before March 9, 2022," and do not show that "the adjuster ever evaluated Plaintiff's claim for non-economic or permanent physical impairment damages" between December 16, 2021 and March 9, 2022. [Doc. 52 at 4 ¶¶ 3–4, 6–7; Doc. 52-3]. She also directs the Court to Mr. Kezer's report, which opines (among other things) that, at the time of the initial denial of the claim in March 2022, there had been "no 'evaluation' of Ms. Marra's UIM claim" and "there was nothing [in the file] to indicate that [the adjuster] (or anyone else at Owners) considered any non-economic losses (which were outlined in detail in Ms. Marra's November 24, 2021, demand letter to [the tortfeasor's insurance company,] which was provided to Owners)." [Doc. 52-24 at 14]. Mr. Kezer also ties these opinions to what he believes are insurance industry standards. *See* [*id.* at 6–7, 14–15].

Because Plaintiff has submitted evidence that Owners initially denied her UIM claim without actually evaluating it and without even considering non-economic damages, she has created a genuine dispute of material fact sufficient to preclude summary judgment, and the reasonableness of Defendant's conduct is "a question of fact for the jury." *Vaccaro*, 275 P.3d at 759.[3]

---

[3] Owners argues in its Reply that its actions between December 2021 and March 9, 2022 are "immaterial" because "Plaintiff testified in her deposition of her belief that Owners' alleged bad faith began on March 9, 2022." [Doc. 53 at 7]. Owners cites no legal authority for the proposition that a non-lawyer litigant's statement that it was her "opinion that [the insurance company's] unreasonable behavior began" on a certain date, [Doc. 53-1 at 125:7–9], renders the insurer's conduct prior to that date completely immaterial to a bad faith claim. To the extent Owners believes that Ms. Marra's deposition testimony helps its case, it may present that evidence to the jury.

The Motion for Summary Judgment is therefore **DENIED** with respect to Plaintiff's statutory bad faith claim.[4]

### 2.    Common Law Bad Faith

To succeed on a common law claim, Plaintiff must show (1) Defendant acted unreasonably; and (2) Defendant acted with knowledge or reckless disregard of its unreasonable conduct. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985). To prove the second element, Plaintiff can show that "Defendant "act[ed] with knowledge that its position lack[ed] a reasonable basis" or that it was "deliberately indifferent to information concerning the claim." *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *11 (D. Colo. Sept. 23, 2021) (citing Colo. Jury Instructions, Civ. § 25:7). Owners argues that summary judgment should enter in its favor on Plaintiff's common law claim because "there is no evidence that Owners acted knowingly unreasonably or in reckless disregard of being unreasonable, as required for Plaintiff to satisfy her burden on her Common Law Bad Faith Claim." [Doc. 46 at 19]. In her Response, Ms. Marra does not squarely address Defendant's argument about the knowledge or reckless disregard requirement. *See* [Doc. 52 at 18–19]. She asserts that there are disputes of fact about whether "Defendant failed to conduct an evaluation of Plaintiff's claim, much less conduct a reasonable evaluation," [*id.* at 18], and she argues that, based on these disputes, a reasonable jury could find that Defendant acted in bad faith, *see* [*id.* at 18–19].

---

[4] However, for the reasons explained above, Plaintiff will not be permitted to argue at trial that Defendant's reliance on Dr. Eskay-Auerbach's report was unreasonable or that Defendant lacked a reasonable basis to deny Plaintiff's October 2023 UIM demand.

Defendant has not demonstrated an entitlement to summary judgment on Plaintiff's common law claim. To succeed on her common law bad faith claim, Ms. Marra must show that Owners knew its conduct was unreasonable *or* that Owners acted with reckless disregard for its unreasonable conduct. *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011). Plaintiff can prove this element by establishing that Owners was "deliberately indifferent to information concerning the claim." *Masters*, 2021 WL 4326269, at *11. Ms. Marra has submitted evidence that Owners initially denied her claim without conducting *any* evaluation of it at all, and that this did not comply with industry standards. *See* [Doc. 52-24 at 14]. A reasonable jury could conclude, based on this evidence, that Owners was deliberately indifferent to information concerning Plaintiff's claim and recklessly disregarded the validity of her claim. *See Fifer v. Travelers Prop. Cas. Co. of Am.*, No. 23-cv-00294-NYW-CYC, 2025 WL 2513472, at *6 (D. Colo. Sept. 2, 2025) (this Court denying summary judgment on common law claim where there were disputes of fact regarding whether the insurer ignored evidence and "whether its investigation was reasonably framed and investigated"); *Palmer v. Owners Ins. Co.*, No. 18-cv-01953-JLK, 2019 WL 7370372, at *4 (D. Colo. Nov. 6, 2019) (concluding that Owners's "failure to fully investigate" could "be viewed as reckless disregard for the validity of the [plaintiffs'] claim").

For these reasons, Defendant has not demonstrated that it is entitled to summary judgment on either of Plaintiff's bad faith claims. The Motion for Partial Summary Judgment is **DENIED**.

II.     **Motion to Exclude**

Owners also moves to exclude or limit the testimony of six expert witnesses disclosed by Ms. Marra.  *See* [Doc. 43].

A.     **Legal Standards**

1.     **Rule 26(a)(2)**

Rule 26(a)(2) governs the disclosure of experts.  Generally, if an expert has been retained or specially employed for the purpose of providing expert testimony, a party must not only identify the expert witness, but must also disclose a report that contains, inter alia, a complete statement of the witness's opinions; the facts and data the witness considered in forming her opinions; a list of cases in which the witness has testified during the previous four years; and a statement of compensation paid to the expert for their testimony.  Fed. R. Civ. P. 26(a)(2)(B).  In contrast, if an expert witness has not been retained, then Rule 26(a)(2)(C) requires the disclosing party to (1) identify the subject matter upon which the witness is expected to present evidence and (2) provide a summary of the facts and opinions to which the witness is expected to testify.  Fed. R. Civ. P. 26(a)(2)(C).  The purpose of these expert disclosures is "to eliminate surprise and provide opposing counsel with enough information . . . to prepare efficiently for deposition, any pretrial motions and trial."  *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006).

The District of Colorado has traditionally employed a burden-shifting analysis to determine whether the requirements of Rule 26(a)(2) have been satisfied.  *See, e.g.*, *Morris v. Wells Fargo Bank, N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *2 (D. Colo. June 17, 2010).  The party moving to strike an expert witness bears the initial

burden of showing that the disclosing party failed to comply with Rule 26(a)(2).  *Id*.  If the moving party makes such a showing, the burden shifts to the disclosing party to demonstrate the sufficiency of the expert disclosures.  *See id.*

### 2.    Rule 37(c)(1)

Where a party "violates [her] discovery obligations under Rule 26, [she] 'is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  *Hellen v. Am. Fam. Ins. Co.*, No. 22-cv-02717-REB-SBP, 2024 WL 1194048, at *3 (D. Colo. Mar. 7, 2024) (quoting Fed. R. Civ. P. 37(c)(1)).  Rule 37(c)(1) provides, in pertinent part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.  *Woodworker's Supply, Inc. v. Principal Mt. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  In exercising its discretion, the Court's consideration is guided by the following four factors:  (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.  *Id.*  The party that violated Rule 26(a) bears the burden of demonstrating that the violation was substantially justified or harmless.  *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004); *accord Hirpa v. IHC Hosps., Inc.*, 50 F. App'x 928, 932 (10th Cir. 2002).

### 3.    Rule 702

Rule 702 of the Federal Rules of Evidence states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). The party offering expert testimony has the burden of showing its admissibility by a preponderance of the evidence. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, the trial court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019). If the expert is qualified, the trial court must determine whether the expert's opinions are reliable by assessing the underlying reasoning and methodology. *Bill Barrett Corp.*, 918 F.3d at 770. The court must also determine whether the expert's opinions are "applicable to a particular set of

facts," i.e., are relevant to the case at hand.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue." *Sanderson*, 976 F.3d at 1172 (cleaned up).

### B.    Analysis

#### 1.    Conceded or Resolved Matters

Owners moves to exclude the testimony of Matt Lane, a nurse consultant hired to observe Ms. Marra's independent medical examination.  [Doc. 43 at 8–9].  In her Response, Ms. Marra "withdraws Mr. Lane as an expert in this case."  [Doc. 47 at 6].  Because Mr. Lane's testimony is no longer at issue, the portion of the Motion to Exclude addressing his testimony is **DENIED as moot**.

Similarly, Owners moves to exclude the testimony of Dr. Scheper because (1) Plaintiff failed to provide a list of Dr. Scheper's testimony history, as required by Rule 26(a)(2)(B)(v); and (2) Plaintiff failed to provide compensation information for Dr. Scheper, as required by Rule 26(a)(2)(B)(vi).  [Doc. 43 at 11–12].  Ms. Marra responds that "Dr. Scheper has not testified in deposition or trial in the last four years so there is no testimonial history to provide."  [Doc. 47 at 10].  She also concedes that she "mistakenly fail[ed] to provide" compensation information, but states she has now "cured that defect." [*Id.* (citing [Doc. 47-5])].  In its reply brief, Defendant "withdraws its Motion as to Dr. Scheper in light of Plaintiff's advisement[s]."  [Doc. 51 at 5].  Accordingly, this portion of the Motion to Exclude is **DENIED as moot**.

2.    **Barbara Hinkle**

Ms. Marra disclosed Barbara Hinkle ("Ms. Hinkle"), a licensed massage therapist, as a non-retained expert witness.  [Doc. 43-1 at 2].  Plaintiff's disclosures state:

> This expert's testimonial opinions will be expressed to a reasonable degree of medical probability.  This expert is expected to testify consistent with their records and reports, previously provided, and/or to be produced prior to trial as well as any deposition testimony, and her endorsement is specifically supplemented by any such future deposition testimony or additional information received.  She is expected to testify concerning her treatment of Plaintiff; concerning amount and reasonableness, necessity and relatedness of any past and future treatment and the cost therefor; concerning muscular anatomy; and concerning mitigation.  Basis of testimony will include this provider's education, personal experience and knowledge with these types of injuries; this provider's reports of treatment and medical or other records; and this providers' [sic] deposition involved in this case, if any; personal history provided by the Plaintiff for purposes of treatment; and this provider's examination of the Plaintiff.

[*Id.*].

Owners argues that Plaintiff's disclosure of Ms. Hinkle is deficient because it "fails to provide any actual and specific opinions, the basis for any such opinions, or the facts supporting those opinions as required by Rule 26(a)(2)(C)."  [Doc. 43 at 9].  Ms. Marra does not defend the sufficiency of this disclosure.  Instead, she argues that even if the Court finds that the disclosure is insufficient, there is no prejudice to Defendant because Defendant "has all of [Ms. Hinkle's] treatment records and was able to depose Ms. Hinkle on July 11, 2025."  [Doc. 47 at 6–7].

The Court agrees with Defendant that Plaintiff's disclosure of Ms. Hinkle fails to comply with Rule 26(a)(2)(C).  Rule 26's advisory committee notes instruct that "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained."  *See* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendments.  "At a minimum, however, a disclosure must obviate the danger of unfair

surprise regarding the factual and opinion testimony of the non-retained expert and contain more than a passing reference to the general type of care a treating physician provided." *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4441518, at *6 (D. Colo. Sept. 28, 2021) (quotation omitted).  Plaintiff's vague references to the categories of opinions Ms. Hinkle will provide, without any supporting facts, do not satisfy Rule 26's requirements.  *See Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2021 WL 1759638, at *3 (D. Colo. Feb. 18, 2021) (finding that the general statement that expert physicians would testify as to their "observations" of the plaintiff, i.e., "general references to material without any specification of what opinions will actually be offered," did not meet the "summary" requirement of Rule 26(a)(2)(C)(ii)); *Hayes v. Am. Credit Acceptance, LLC*, No. 13-cv-02413-RDR, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014) ("It is not enough to state that the witness will testify consistent with information contained [in] the medical records or consistent with the testimony given during his or her deposition.").

Turning to whether the Rule 26(a)(2)(C) violation was substantially justified or harmless, Plaintiff does not expressly address the *Woodworker's* factors, though she does argue that there is no prejudice because Defendant has Ms. Hinkle's treatment notes and was able to depose Ms. Hinkle in July 2025.  [Doc. 47 at 6–7].  Although the issue has been inadequately presented to the Court, the Court declines to impose the "extreme sanction" of excluding Ms. Hinkle's testimony at trial.  *See Hartung v. Gommert*, No. 23-cv-00569-SCY-KK, 2024 WL 2975843, at *6 (D.N.M. June 13, 2024).  Notably, Owners does not argue that it was prejudiced by the deficient disclosure or argue that the deposition was insufficient to cure any prejudice.  *See* [Doc. 51 at 1–2].  And because

there has been no prejudice, the Court need not address ability to cure or the potential for trial disruption, as no actions must be taken to alleviate the prejudice. And finally, there is no evidence of bad faith on the part of Ms. Marra.

While the Court does not condone Plaintiff's noncompliance with Rule 26, the Court does not believe complete exclusion of Ms. Hinkle's testimony is warranted. Accordingly, the Motion to Exclude is **DENIED** as to Ms. Hinkle.[5]

### 3.    Richard Walford and Thomas Higginbotham

Plaintiff also disclosed Richard Walford, D.C. ("Dr. Walford"), and Thomas Higginbotham, D.O. ("Dr. Higginbotham"), as non-retained expert witnesses. [Doc. 43-1 at 1–3]. Owners asserts that Plaintiff's designations of these providers as non-treating experts are improper because they are expected "to opine on matters which go beyond their role as a treating provider," so a Rule 26(a)(2)(B) expert report from each is required. [Doc. 43 at 10]. Specifically, Defendant challenges these providers' opinions that the subject accident caused Plaintiff's injuries. [*Id.*].

Treating providers are typically designated as non-retained experts, as the provider's testimony generally flows from what the provider "saw and did" when examining, diagnosing, and treating a patient. *Bettmann v. Owners Ins. Co.*, No. 22-cv-

---

[5] Defendant also moves to exclude Ms. Hinkle's testimony on the grounds that she is not qualified to offer testimony "pertaining to practicing medicine, physical therapy, chiropractic therapy, making medical diagnoses, or . . . causation." [Doc. 43 at 9–10]. Ms. Marra clarifies in her Response that Ms. Hinkle "will not be offered to testify concerning the practice of medicine, physical therapy or chiropractic care, permanence or impairment" and will only provide opinions "concerning her treatment of Plaintiff and the costs, as well as muscular anatomy necessary for her testimony." [Doc. 47 at 6]. With this clarification and limiting of Ms. Hinkle's opinions, the Court finds that Defendant's Rule 702 argument (which does not assert that Ms. Hinkle is unqualified to opine about muscular anatomy or her treatment of Plaintiff) is moot.

03313-REB-STV, 2024 WL 1829263, at *1 (D. Colo. Feb. 12, 2024).  However, "when a treating physician opines as to causation, prognosis, or future disability, he is going beyond his personal involvement in the facts of the case and giving an opinion formed because there is a lawsuit."  *Fitzgerald ex rel. Fitzgerald v. Cath. Health Initiatives Colo.*, No. 21-cv-00006-WJM-TPO, 2025 WL 861171, at *3 (D. Colo. Mar. 19, 2025) (cleaned up).  "In most cases, . . . an expert may offer such opinions only if they have produced a report that complies with Rule 26(a)(2)(B)."  *Id.*

In her Response, Ms. Marra argues that Dr. Walford "has training in biomechanics and accident reconstruction" and "regularly makes causation determinations from trauma."  [Doc. 47 at 7].  She notes that Dr. Walford treated Plaintiff from July 2019 to June 2021 and "has opined that the collision caused Ms. Marra's injures," but she does not expressly argue that Dr. Walford formed his causation opinions during his treatment of Plaintiff.  *See* [*id.* at 7–8].  Similarly, Ms. Marra argues that Dr. Higginbotham "has been trained to determine cause of injuries" and that "his causation opinions formed following his first meeting with Ms. Marra [and] were not the product of anticipation of litigation given that his treatment of Plaintiff ended over three years before this case was filed."  [*Id.* at 9].

***Dr. Walford.***  Insofar as Plaintiff's citations to Dr. Walford's deposition testimony can be construed as an argument that Dr. Walford formed his opinions during the course of his treatment of Plaintiff, the Court recognizes that Dr. Walford asserts that his causation opinions were formed through his "diagnostic workup, orthopedic tests, range of motion or loss of range of motion [tests]."  [Doc. 47-3 at 27:6–16]; *see also* [*id.* at 32:24–33:3 (stating that his opinion that Plaintiff's sciatica was caused by the accident was based

on "X-ray and MRI reports" and "hands[-]on diagnostic palpation"); *id.* at 30:21–31:1 (also

stating that his opinions were based in part on Plaintiff's history)]. To the extent Dr.

Walford formed his causation opinions based on his treatment of Plaintiff, his education,

and his experience, he generally would be permitted to offer that testimony. *See Etherton*

*v. Owners Ins. Co.*, 35 F. Supp. 3d 1360, 1372 (D. Colo. 2014) (collecting cases reflecting

that "opinions of treating physicians on injury causation—based on medical knowledge,

physical examination, and patient histories—are routinely admitted in federal courts"),

*aff'd*, 829 F.3d 1209 (10th Cir. 2016); *see also Hubchik v. Owners Ins. Co.*, No. 23-cv-

01359-DDD-KAS, 2025 WL 902164, at *8 (D. Colo. Jan. 28, 2025) (permitting causation

testimony based on doctor's experience and expertise; the plaintiff's history, complaints,

and symptoms; and the doctor's physical examination of the plaintiff and imaging).[6]

Even so, Plaintiff's disclosure of Dr. Walford is deficient under Rule 26(a)(2)(C).

Owners argues that "Plaintiff failed to sufficiently convey any particular facts, based on

[Dr. Walford's] observations, as to how and why [he] reached those conclusions." [Doc.

43 at 11]. Once again, Ms. Marra does not defend the sufficiency of her disclosures under

Rule 26(a)(2)(C), instead focusing on a purported lack of prejudice arising from the

deficient disclosure. [Doc. 47 at 8]. The Court agrees with Owners that Plaintiff's

disclosure fails to comply with Rule 26(a)(2)(C), as it does not contain a summary of the

facts and opinions to which the witness is expected to testify. *See* [Doc. 43-1 at 2–3]; *see*

*also Tuft*, 2021 WL 1759638, at *3; *Hayes*, 2014 WL 3927277, at *3.

---

[6] Defendant asserts that Dr. Walford "did not mention the subject accident in any of his
treatment records." [Doc. 51 at 2]. However, neither Party has provided the Court with
Dr. Walford's treatment records, so the Court cannot confirm this assertion.

Turning to the *Woodworker's* factors, Ms. Marra contends only that "the fact that Defendant has had the chance to depose [Dr. Walford] with all of his treatment records as well as the fact that no trial is set in this matter eliminates any potential surprise or prejudice to Defendant." [Doc. 47 at 8]. Owners responds that its ability to take Dr. Walford's deposition does not cure the prejudice caused by the deficient disclosure because Owners "did not know the specific factual bases for [Dr. Walford's] causation opinions until *during* the deposition," so "Owners' counsel was unable to effectively prepare for" the deposition. [Doc. 51 at 4]. It also mentions that Dr. Walford's deposition occurred after the rebuttal expert deadline, so Owners was unable to arrange rebuttal experts to address his causation opinions. [*Id.*].

This Court finds that Owners was prejudiced by Plaintiff's deficient disclosure because it was unable to effectively prepare for Dr. Walford's deposition and was unable to retain a rebuttal expert to address Dr. Walford's causation opinions. And while the trial has not been set in this case, the rebuttal expert deadline expired on June 27, 2025, and discovery closed on July 30, 2025. [Doc. 34]; *see also Fifer v. Travelers Prop. Cas. Co. of Am.*, No. 23-cv-00294-NYW-CYC, 2025 WL 2418498, at *10 (D. Colo. Aug. 21, 2025) (this Court finding prejudice in similar circumstances). Plaintiff does not suggest that these discovery deadlines should be extended (or establish good cause to do so) or offer any other methods through which the prejudice may be cured. *See* [Doc. 47 at 8]. However, the Court is mindful that exclusion is an "extreme sanction." *Hartung*, 2024 WL 2975843, at *6. Accordingly, to the extent that Plaintiff seeks to offer causation opinions through Dr. Walford at trial—limited to those opinions formed from his diagnostic workup, orthopedic tests, range of motion or loss of range of motion tests—Plaintiff shall make Dr.

Walford available for an additional deposition no later than **April 24, 2026 and shall bear the costs of such deposition**.  Alternatively, Dr. Walford's testimony will be limited to his percipient knowledge of treatment, and he will not be permitted to testify as to any causation opinions.

      ***Dr. Higginbotham.***    Ms. Marra contends that Dr. Higginbotham's causation opinions were "formed following his first meeting with Ms. Marra [and] were not the product of anticipation of litigation given that his treatment of Plaintiff ended over three years before this case was filed."  [Doc. 47 at 9].  But Ms. Marra points to no actual evidence showing that Dr. Higginbotham's causation opinions were formed exclusively during the course of his treatment of Plaintiff.  The treatment notes from the initial evaluation on January 3, 2019 contain no causation opinions.  [Doc. 47-1].  Insofar as subsequent treatment notes could be construed to contain causation opinions, *see, e.g.*, [Doc. 47-2 at 3 ("[Plaintiff] has had permanent sequela related to this motor vehicle collision."); *id.* at 4 ("Ms. Marra returns for further evaluation and treatment for injuries stemming from a motor vehicle collision.")], the notes provide no basis for the Court to conclude that Dr. Higginbotham formed these opinions during the course of his treatment. And Plaintiff does not direct the Court to any specific portions of Dr. Higginbotham's deposition testimony that she believes show he formed his causation opinions during his treatment of Plaintiff.  *See* [Doc. 47 at 9–10].  Ms. Marra has thus not met her burden of showing that Dr. Higginbotham's causation opinions are based on his percipient knowledge and treatment of Plaintiff.  Therefore, an expert report was required under Rule 26(a)(2)(B), and Plaintiff's failure to provide a report constitutes a Rule 26 violation.

As for the *Woodworker's* factors, Plaintiff argues that "any potential prejudice is harmless given that no trial is set and the Defendant has examined [Dr. Higginbotham's] opinions through deposition." [Doc. 47 at 10]. Owners again notes that it was not informed of the specific basis of Dr. Higginbotham's causation opinions until his deposition, so it was "unable to effectively prepare." [Doc. 51 at 4]. It also asserts that it has been prejudiced by the lack of an expert report because the deposition did not occur until after the rebuttal expert deadline. [*Id.*]. The Court agrees with Defendant that it has been prejudiced by the missing expert report, and Plaintiff has not presented any argument explaining how this prejudice can be cured. And although the trial has not yet been set, requiring Dr. Higginbotham to prepare an expert report and permitting Defendant to disclose an additional rebuttal witness would delay the setting of trial. In light of these circumstances, the Court finds that limiting Dr. Higginbotham's causation opinions is therefore warranted.

The Motion to Exclude is therefore **GRANTED** to the extent it seeks to preclude Dr. Higginbotham from offering causation opinions at trial.[7]

### 4. John Kezer

Finally, Defendant moves to exclude a few dozen opinions offered by John Kezer, Plaintiff's insurance industry expert. *See* [Doc. 43 at 12–15]. It challenges opinions contained both in Mr. Kezer's affirmative report, [Doc. 43-4 (the "Kezer Report")], and in his rebuttal report, [Doc. 43-5 (the "Kezer Rebuttal Report")], breaking up the numerous

---

[7] Because Defendant's challenge to Dr. Higginbotham's opinions is limited to causation opinions, *see* [Doc. 43 at 10], he will still be permitted to opine at trial about his treatment of Plaintiff.

opinions into a few discrete categories, *see* [Doc. 43 at 12–15].[8]  The Court addresses each category of challenged opinions below.

### a.    Opinions About What the Law Is

Owners challenges what it deems "impermissible statements of the applicable law," arguing that these opinions should be excluded because they invade the Court's role in instructing the jury on what the law is.  [*Id.* at 13–14].  Although many of the challenged opinions concern Defendant's purported lack of compliance with insurance industry standards, Owners insists that these opinions actually assert that "Owners violated or failed to satisfy" regulations, statutes, and case law. [*Id.* at 13].  Owners does not raise arguments specific to any particular opinion, instead challenging 16 opinions collectively.  *See* [*id.* at 13–14].

Our judicial system "reserves to the trial judge the role of adjudicating the law for the benefit of the jury."  *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  Thus, courts routinely conclude an expert witness "may not direct the jury's understanding of the applicable legal rights and obligations of the parties."  *Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-03569-NYW, 2021 WL 4201583, at *6 (D. Colo. May 6, 2021). Importantly, however, "simply referring to the law as part of the basis for an opinion will not render that opinion improper."  *EEOC v. W. Distrib. Co.*, 643 F. Supp. 3d 1205, 1219 (D. Colo. 2022); *see also United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (recognizing that courts "allow experts to refer to the law in expressing their opinion" (cleaned up)).  "[A]n expert's testimony is proper under Rule 702 if the expert does not

---

[8] Defendant has labeled each challenged opinion by number.  *See, e.g.*, [Doc. 43-4 at 30; Doc. 43-5 at 3].   For ease of reference, the Court follows Defendant's numbering convention.

attempt to define the legal parameters within which the jury must exercise its fact-finding function."  *Specht*, 853 F.2d at 809–10.  But if the expert's testimony "direct[s] the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed."  *Id.* at 810.[9]

The Motion to Exclude is **GRANTED in part** and **DENIED in part** with respect to these opinions, as follows:

| Opinion challenged | Ruling |
|---|---|
| Kezer Report, Opinion 1 [Doc. 43-4 at 11] | **Overruled.**  This opinion does not usurp the Court's role in instructing the jury.  References to law do not render an expert's opinions inadmissible, *Schneider*, 704 F.3d at 1294, and some insurance industry standards are set forth in statutes, *see Gribowski v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03115-MEH, 2022 WL 16855688, at *4 (D. Colo. Nov. 10, 2022). |
| Kezer Report, Opinion 4 [Doc. 43-4 at 14–15]. | **Overruled.**  References to industry standards do not usurp the Court's role in instructing the jury.  *But see infra* page 31 (clarifying limitations on this opinion). |
| Kezer Report, Opinion 5 [Doc. 43-4 at 20]. | **Overruled.**  This opinion does not usurp the Court's role in instructing the jury. |
| Kezer Report, Opinion 6 [Doc. 43-4 at 21]. | **Overruled.**  This opinion does not usurp the Court's role in instructing the jury.  *But see infra* page 31 (limiting this opinion for other reasons). |
| Kezer Report, Opinion 9 [Doc. 43-4 at 30]. | **Overruled.**  This opinion does not usurp the Court's role in instructing the jury, as references to law do not render an expert's opinions inadmissible.  *Schneider*, 704 F.3d at 1294.  *But see infra* page 31 (clarifying limitations on this opinion). |
| Kezer Report, Opinion 10 [Doc. 43-4 at 30]. | **Overruled.**  This opinion does not usurp the Court's role in instructing the jury. |
| Kezer Report, Opinion 12 [Doc. 43-4 at 32]. | **Overruled.**  This opinion does not usurp the Court's role in instructing the jury, as references to law do not render an expert's opinions inadmissible.  *Schneider*, 704 F.3d at 1294. |
| Kezer Report, Opinion 14 [Doc. 43-4 at 32]. | **Sustained.**  An opinion that Owners owed a legal duty improperly "usurp[s] the function of the trial judge to |

---

[9] Owners also argues that "allowing Kezer to opine as to these sources of law as insurance industry standards will undoubtedly lead to confusing the jury." [Doc. 43 at 14]. Owners does not explain why permitting Mr. Kezer to merely reference sources of law, which is permissible, *see Schneider*, 704 F.3d at 1294, would confuse the jury.

| | |
|---|---|
| | instruct the jury on the law." *Baumann v. Am. Fam. Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011). |
| Kezer Report, Opinion 17 [Doc. 43-4 at 34]. | **Overruled.** This opinion does not usurp the Court's role in instructing the jury. |
| Kezer Report, Opinion 18 [Doc. 43-4 at 35]. | **Overruled.** References to industry standards or law do not usurp the Court's role in instructing the jury. *Schneider*, 704 F.3d at 1294. |
| Kezer Report, Opinion 19 [Doc. 43-4 at 35]. | **Overruled.** This opinion does not usurp the Court's role in instructing the jury. *But see infra* page 31 (excluding this opinion for other reasons). |
| Kezer Report, Opinion 23 [Doc. 43-4 at 42]. | **Overruled.** This opinion does not usurp the Court's role in instructing the jury. *But see infra* page 31 (excluding this opinion for other reasons). |
| Kezer Rebuttal Report, Opinion 6 [Doc. 43-5 at 4]. | **Overruled.** This opinion does not contain any legal references and does not usurp the Court's role in instructing the jury. |
| Kezer Rebuttal Report, Opinion 8 [Doc. 43-5 at 5]. | **Overruled.** This opinion does not contain any legal references and does not usurp the Court's role in instructing the jury. *But see infra* page 31 (excluding this opinion for other reasons). |
| Kezer Rebuttal Report, Opinion 9 [Doc. 43-5 at 6]. | **Overruled.** References to law do not render an expert's opinions inadmissible. *Schneider*, 704 F.3d at 1294. |
| Kezer Rebuttal Report, Opinion 10 [Doc. 43-5 at 6]. | **Overruled.** This instruction does not usurp the Court's role in instructing the jury. *But see infra* page 32 (excluding this opinion for other reasons). |

### b.    Opinions that Tell the Jury How to Decide the Case

Next, Owners argues that some of Mr. Kezer's opinions impermissibly usurp the jury's fact-finding role by "instruct[ing] the jury how to conclude." [Doc. 43 at 14]. It argues that these opinions amount to "impermissible legal conclusions," as Mr. Kezer opines that Owners violated certain statutes or failed to comply with certain insurance industry standards, and contends that these opinions would not be helpful to the jury. [*Id.*]. Defendant challenges thirteen[10] separate opinions on this basis, without making specific arguments as to any particular opinion. [*Id.*].

---

[10] Because the Court has sustained Defendant's objection to Opinion Number 14 in the Kezer Report, the Court does not consider Defendant's other challenge to that opinion.

An expert witness may not "state legal conclusions drawn by applying the law to facts," *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991), as "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function," *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017). In insurance cases, courts often hold that an expert may not testify that an insurance company did or did not act in bad faith or did or did not act reasonably, as such opinions amount to impermissible legal conclusions. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1269 (D. Colo. 2022); *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4317112, at *10 (D. Colo. Sept. 23, 2021). Similarly, an expert may not opine that an insurance company violated the law or violated the duty of good faith and fair dealing. *O'Sullivan*, 233 F. Supp. 3d at 930; *Specht*, 853 F.2d at 808.

However, it is well-established in this District that an industry expert may opine about whether an insurer complied with industry standards. *See George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *9, *13 (D. Colo. Jan. 2, 2020) (permitting expert testify that insurer's conduct "did not conform with" or "departed from" insurance industry standards); *Canyon Club Condo. Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 18-cv-00683-DDD-STV, 2023 WL 10410009, at *4 (D. Colo. Sept. 29, 2023) (concluding that expert's opinions about whether insurer complied with industry standards "may assist the jury in its determination of whether or not the insurance claim was investigated reasonably").

The Motion to Exclude is **GRANTED in part** and **DENIED in part** with respect to these opinions, as follows:

| Opinion Challenged | Ruling |
|---|---|
| Kezer Report, Opinion 1 [Doc. 43-4 at 11]. | **Overruled.** An expert may opine about whether an insurer's conduct complied with industry standards. *George*, 2020 WL 70424, at *9. However, Mr. Kezer will not be permitted to couch his opinions as a statement that Owners violated any statutory provision or other provision of law. *O'Sullivan*, 233 F. Supp. 3d at 930. |
| Kezer Report, Opinion 4 [Doc. 43-4 at 14–15]. | **Overruled.** Mere references to industry standards do not usurp the jury's fact-finding function, nor do Mr. Kezer's opinions concerning his interpretation of the evidence, so long as he does not direct the jury which way to decide. |
| Kezer Report, Opinion 5 [Doc. 43-4 at 20]. | **Overruled.** An expert may opine about whether an insurer's conduct complied with industry standards. *George*, 2020 WL 70424, at *9. |
| Kezer Report, Opinion 6 [Doc. 43-4 at 21]. | **Sustained.** An expert may opine about whether an insurer's conduct complied with industry standards, *George*, 2020 WL 70424, at *9, but may not proceed to draw the conclusion for the factfinder that a duty was breached, *Wise v. USAA Cas. Ins. Co.*, No. 22-cv-01694-REB-STV, 2024 WL 6100421, at *4 (D. Colo. June 27, 2024). |
| Kezer Report, Opinion 9 [Doc. 43-4 at 30]. | **Overruled.** References to industry standards or law do not usurp the jury's fact-finding function. However, Mr. Kezer will not be permitted to opine that Owners violated the law. *O'Sullivan*, 233 F. Supp. 3d at 930. |
| Kezer Report, Opinion 10 [Doc. 43-4 at 30]. | **Overruled.** An expert may opine about whether an insurer's conduct complied with industry standards. *George*, 2020 WL 70424, at *9. |
| Kezer Report, Opinion 12 [Doc. 43-4 at 32]. | **Overruled.** An opinion that "one must stop and consider" whether Owners violated industry standards does not usurp the jury's fact-finding function. However, Mr. Kezer will not be permitted to opine that Owners violated the law. *O'Sullivan*, 233 F. Supp. 3d at 930. |
| Kezer Report, Opinion 18 [Doc. 43-4 at 35]. | **Overruled.** This opinion does not usurp the jury's fact-finding function. |
| Kezer Report, Opinion 19 [Doc. 43-4 at 35]. | **Sustained.** Mr. Kezer may not opine that Owners violated the law. *O'Sullivan*, 233 F. Supp. 3d at 930. |
| Kezer Report, Opinion 23 [Doc. 43-4 at 42]. | **Sustained.** An expert may not testify that an insurer acted reasonably or unreasonably or that an insurer violated the law. *Bethel*, 596 F. Supp. 3d at 1269; *O'Sullivan*, 233 F. Supp. 3d at 930. |
| Kezer Rebuttal Report, Opinion 8 [Doc. 43-5 at 5]. | **Sustained.** An opinion that Owners did not attempt to "fairly evaluate Ms. Marra's claim" runs too close to an opinion that Owners acted unreasonably, which is not permissible. *Bethel*, 596 F. Supp. 3d at 1269. |

| Kezer Rebuttal Report, Opinion 9 [Doc. 43-5 at 6]. | **Overruled.** An expert may opine about whether an insurer's conduct complied with industry standards. *George*, 2020 WL 70424, at *9. |
| Kezer Rebuttal Report, Opinion 10 [Doc. 43-5 at 6]. | **Sustained.** Mr. Kezer may not testify that Owners acted unreasonably or acted in bad faith. *Bethel*, 596 F. Supp. 3d at 1269. |

### c.    Legal Conclusions Disguised as Opinions

Next, Owners challenges four separate opinions of Mr. Kezer's, arguing that these opinions are "pure legal conclusions regarding relevancy, breach of the policy, and creation of a legal duty." [Doc. 43 at 14]. The Motion to Exclude is **GRANTED in part** and **DENIED in part** with respect to these opinions, as follows:

| Opinion Challenged | Ruling |
|---|---|
| Kezer Report, Opinion 2 [Doc. 43-4 at 11]. | **Sustained.** Opinions regarding what may be required under the Federal Rules of Civil Procedure are not permissible. |
| Kezer Report, Opinion 3 [Doc. 43-4 at 13]. | **Overruled.** This opinion is not a legal conclusion. |
| Kezer Rebuttal Report, Opinion 2 [Doc. 43-5 at 2]. | **Overruled.** This opinion is not a legal conclusion. |
| Kezer Rebuttal Report, Opinion 3 [Doc. 43-5 at 3]. | **Sustained.** An opinion that Plaintiff's injuries were caused by the accident is not permitted. *A.E.*, 936 F.2d at 476. |

### d.    Opinions that Are Irrelevant, Unhelpful, or Confusing

Finally, Owners seeks exclusion of 16 separate opinions on the grounds that they are "irrelevant to the case, do not assist the factfinder, or otherwise cause confusion." [Doc. 43 at 15]. Owners challenges these opinions collectively, without explaining why any particular opinion is irrelevant, unhelpful, or confusing. *See* [*id.*]. At best, Owners asserts that "there are no claims or defenses pertaining to advertising, medical payments coverage, post-litigation discovery, and claims assignment," so any opinions related to those topics "are neither relevant to Plaintiff's pled claims, nor would they help the factfinder." [*Id.*].

32

The Court will not independently review all 16 opinions to determine each opinion's relevance, helpfulness, or clarity.  It is not this Court's duty to scour the record in support of Defendant's arguments, ascertain which opinions relate to "advertising, medical payments coverage, post-litigation discovery, [or] claims assignment," or otherwise construct arguments on Defendant's behalf.  *Ramos v. Banner Health*, 1 F.4th 769, 783 (10th Cir. 2021).  Accordingly, the Motion to Exclude is **DENIED** with respect to these opinions.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    Defendant Owners Insurance Company's Opposed Motion to Limit and/or Exclude Expert Testimony Pursuant to Fed. R. Civ. P. 26(a)(2) and F.R.E. 702 [Doc. 43] is **GRANTED in part** and **DENIED in part**;

(2)    Defendant Owners Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Second and Third Claims for Relief Pursuant to Fed. R. Civ. P. 56(a) [Doc. 46] is **DENIED**; and

(3)    A Telephonic Status Conference is **SET** for **March 17, 2026 at 9:30 A.M.** to set the Final Pretrial/Trial Preparation Conference and trial in this case. Counsel for the Parties shall participate using the following dial-in information:  **571-353-2301; Access Code:  783456374**.

DATED:  February 24, 2026                    BY THE COURT:

Nina Y. Wang
United States District Judge